STAN L. JOHNSON, )
                                      )
      Plaintiff, )
v. )   Civil Action No. 3:05-CV-153
                                      )   Judge Thomas W. Phillips
TARGET CORPORATION and )
TARGET STORES, INC., )
                                      )
      Defendants. )

## MEMORANDUM AND ORDER

This is an action by an employee against his former employer to recover overtime compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. The plaintiff is also claiming employment retaliation in violation of the FLSA, Title VII of the Civil Rights Act ("Title VII"), and the Tennessee Human Right Act ("THRA"). The defendant has moved the Court for summary judgment on both claims; the plaintiff has responded in opposition; and the defendant has replied. For the reasons that follow, defendant's motion for summary judgment in regard to both claims is **DENIED**.

## LAW APPLICABLE TO RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the

1

facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6thCir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6thCir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6thCir.1996).

## **BACKGROUND**

The facts of this case will, of course, be considered in the light most favorable to the plaintiff, Mr. Stan Johnson ("Mr. Johnson"). Mr. Johnson began working for Target Corporation and/or Target Stores, Inc. ("Target") in October of 2001. After several weeks of training at what Target terms a "business college," Mr. Johnson began working at the Clinton Highway Target store in Knoxville, Tennessee in the position of Executive Team Leader-Guest Services ("ETL-Guest Services").

In October of 2003, Mr. Johnson was transferred to Knoxville, Tennessee's SuperTarget store in the position of Executive Team Leader-Replenishment ("ETL-Replenishment") at a salary of $52,500 per year. At SuperTarget, the ETL-Replenishment position is teamed with an Executive Team Leader-Logistic (ETL-Logistics) position. The Logistic department, as a whole, replenishes the merchandise throughout the store as needed. When Mr. Johnson started at SuperTarget, the first two weeks were strictly overnight. Thereafter, Mr. Johnson worked various shifts throughout Target's 24-hour operating day. Most ETLs worked 10-hour days, 5 days per week.

As ETL-Replenishment, Mr. Johnson stated that he spent approximately 80% of his time "pushing freight." Mr. Johnson described "pushing freight" as manual labor, such as stocking shelves; unloading trucks; breaking down and storing pallets; disposing of cardboard boxes and containers; cleaning and organizing the store and/or back room; sweeping; back-stocking merchandise (putting merchandise, which currently is unable to be stocked into its proper location in the back room); organizing equipment located in the back room, such as forklifts and other mechanical equipment; driving and otherwise operating mechanical equipment; and refilling merchandise, which has been sold in the store with new merchandise.

At certain times during the day shift, Mr. Johnson served as Leader on Duty ("LOD") from approximately January of 2004 to June or July of 2004. Mr. Johnson stated that the LOD shift was in addition to his duties as ETL-Replenishment. Mr. Johnson presented that

3

he was still required to push freight 50- 60% of his time during an LOD shift. In essence, Mr. Johnson asserted that he was a "high-paid stock boy."

As part of his employment, Mr. Johnson had meetings with the ETL-Logistics personnel, but these were few due to time constraints. Also, Mr. Johnson stated that he performed around 60 interviews a year, totaling around 10 hours of the year. Mr. Johnson stated that he would give his input on an applicant, and then HR personnel would typically make the decisions of hiring. Mr. Johnson stated that he helped and/or encouraged a few employees in regard to promotions, mentoring, etc. Also, Mr. Johnson indicated that he had some authority to discipline, but his acts of disciplining were minimal. Mr. Johnson reported two worker compensation injuries, and he estimated that his e-mailing was once a day for about 10 minutes. Furthermore, he stated that he allowed employees to voice complaints to him; he signed up some employees for training; he administered and reviewed performance reviews for team members and team leaders; he logged sick calls; he monitored and coordinated time lines and work performed by employees; and he sent employees home in conjunction with keeping payroll down. In addition, he would request more personnel to meet Target's needs, deal with customer complaints, and would leave messages to other Target personnel as to what work was performed and what needed to be performed.

Although Mr. Johnson stated that he performed the above managerial tasks, he asserted that he spent the majority of his time doing manual tasks, including unloading trucks, loading goods onto pallets, and stocking merchandise in the store. Furthermore,

Mr. Johnson stated that, as a result of the extensive amount of time he spent on manual labor, he had very little time to perform the non-manual "paper duties" and responsibilities listed on his job description.

In April of 2004, Christin Disler ("Ms. Disler") filed a complaint against another Target store. She had held the position of ETL-Logistics at the Ray Mears Boulevard Target store. Her claims included overtime wage violations and retaliation under the FLSA, as well as sex discrimination and retaliation under Title VII and the THRA. On October 11, 2004, Mr. Johnson participated in an investigation into Ms. Disler's claims by providing a verbal statement in a phone conversation to a Target attorney. In his statement, Mr. Johnson told the Target attorney that he essentially performed the same job as Ms. Disler. He also relayed that Ms. Disler had expressed to him that she was unhappy about the amount of hours she worked; that she often was left to complete various manual work after her team leaders and team members had left; that she worked approximately 14-16 hours per day; and that she had been mistreated.

Mr. Johnson claims that because of that interview, Target, namely Mr. Oakley, retaliated against him. He stated that he was subjected to an unjustified negative performance review; an unjustified reprimand; inequitable and disparate discipline; longer work hours than other supervisors; and harassing and humiliating treatment.

In regard to some of the specifics of Target's retaliatory actions, Mr. Johnson articulated that he was forced to work longer than other ETLs. Mr. Johnson stated that he

worked significantly more than 50 hours per week, recalling 16-hour work days and coming in on his "off" days. He was told on many occasions by Mr. Oakley that he could not to leave until his work was done. Further, he stated that Mr. Oakley continually gave him disgusted looks when addressing him; spoke to him in a negative and harassing manner; and forced him to perform work outside of medical restrictions. Furthermore, Mr. Johnson asserted that Mr. Oakley was trying to "run him out" of Target. Mr. Johnson recalled that Mr. Oakley told him to do a "gut-check" to see if a career with Target was the right fit; that there were other jobs out there like Advance Auto parts, CarMax, etc.; and "to take it for what it's worth." Furthermore, Mr. Johnson indicated that Mr. Oakley, when not at the store, would call and harass Mr. Johnson at the store about work obligations.

Mr. Johnson's evaluation took place approximately one month after he gave a statement. Mr. Oakley had delegated the task of the evaluation to the ETL-Logistics, Bobby Burke. Mr. Johnson claimed that after Mr. Burke had completed the review, Mr. Oakley reduced the marks, including modification of a "medium" mark to a "medium low" mark in execution. Further, Mr. Johnson understood that Mr. Oakley wanted to reduce Mr. Johnson's marks further. Mr. Johnson asserted that Mr. Oakley's desire to reduce marks on his evaluation coupled with Mr. Oakley's comments in assessment of his abilities were unjustified and intended to harass and humiliate him.

In regard to the reprimand, a Confidential Corrective Action Report was issued on November 21, 2004 against Mr. Johnson. Target had issued a policy stating that the store alarm was to be set no later than 12:30 a.m. and be taken down no earlier than 5 a.m.

6

Although Mr. Johnson admitted that he violated the policy, he stated that Mr. Burke had taken down the alarm before; however, he was the only employee reprimanded for violation of the policy.

Mr. Johnson stated that he reported the disparate, hostile, humiliating, and retaliatory treatment to Target before he left employment. In particular, he advised Cindy Psimer, the Human Resources Representative at SuperTarget, that he had provided a telephone statement to Target and that everything had been worse since that statement. He stated that he also reported the writeup and negative performance review. Further, he stated that he reported the negative and harassing manner in which Mr. Oakley addressed him and that Mr. Oakley continually had a disgusted look upon his face when addressing him.

Mr. Johnson admitted that he did not know personally that Mr. Oakley was aware that he participated in the Disler investigation but that he assumed from the relationships between the STLs that Mr. Oakley was aware of the situation. Mr. Oakley admitted that, in the middle of the fall or October of 2004, Kim Canda, the STL involved in the Disler lawsuit, told him that Ms. Disler had filed a claim against Target. In addition, Mr. Johnson believes that he might have mentioned the Disler matter, including receiving a phone call, in a causal conversation with Mr. Oakley; however, Mr. Oakley immediately shut him down, stating "[t]hat's another building, I don't want to hear about it." In addition, Mr. Johnson stated that he told both Bobby Burke and Robin Jetton, other ETL personnel at the SuperTarget store, that he had given "testimony" regarding Disler's lawsuit.

7

Mr. Johnson left Target on December 4, 2004, and his employment formally ended on or around January 15, 2005. He claimed that Target failed to take prompt action to resolve and cure the situation and that Target failed to arrange a prompt transfer. Mr. Johnson stated that he refused to work under intolerable conditions. As a result, Mr. Johnson is now seeking damages for retaliatory discharge and overtime for compensation for his employment period of October 2003 through December 4, 2004.

## **MOTION FOR SUMMARY JUDGMENT AND APPLICABLE LAW**

### **Fair Labor Standard Claim**

The Fair Labor Standards Act (FLSA) requires an employer to compensate an employee who works in excess of 40 hours a week at a rate not less than one and one-half times the regular rate at which he is employed. 29 U.S.C. § 207(a)(1). However, these overtime compensation provisions do not apply to any employee who is employed in a bona fide executive, administrative, or professional capacity. 29 U.S.C. § 213(a)(1). Congress delegated the responsibility of defining the phrase "bona fide executive capacity" to the Secretary of Labor. *Id.*

Under the pertinent Secretary of Labor regulations that apply to this case, a "bona fide executive," or an "exempt" employee, shall mean an employee 1) who is paid a salary

8

of not less than $455 per week; 2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; 3) who customarily and regularly directs the work of two or more other employees; and 4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight.[1]  29 C.F.R. § 541.100(a).

For purposes of this motion, the disputed factor of the above analysis is whether Mr. Johnson's primary duty is management.  The Secretary's regulations provide some guidance as to the meaning of the terms "management" and "primary duty."

The following duties are considered managerial in nature:

Interviewing, selecting, and training employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their

---

[1]  The Court relies on the updated version of the Secretary's regulations revised August 23, 2004 since the plaintiff's employment ended on or about January 15, 2005 and since he filed his complaint on March 21, 2005.  *See Casto v. Royal Oak Industries*, 2006 WL 322485 *3 n. 6 (W.D.Mich.2006).

Prior to the Title 29 Part 541 amendments effective in August of 2004, the governing regulations established a "long test" and a "short test" for determining whether an employee fits within the "executive exemption."  *See Ale v. Tennessee Valley Authority*, 269 F.3d 680, 638-84 (6thCir.2001) (describing this prior regulatory framework).  The parties referred to these earlier regulations in their briefs with both sides agreeing that the  "short test" would apply here.  The amended regulations essentially contain the factors previously used in the"short test" with two modifications:  1) the addition of the fourth factor concerning authority to affect the status of other employees and 2) the increased requirement of $455 salary per week.  *See also* 69 Fed.Reg. 22122, 22131 (Apr. 23,2004) (stating that the amended regulations adopt "the current short test requirements plus a third objective requirement taken from the long test").

The application of the "executive" exemption in this case turns essentially upon the factor related to Plaintiff's primary duty.  Plaintiff admitted in his deposition testimony that his opinions were given some weight in decisions relating to the status of other employees; that he was making more than $455 per week; and that he supervised more than two employees.

productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery, or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[2]

29 C.F.R. § 541.102.

The term "primary duty" means the "principle, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. *Id.* Factors for the court to consider when determining the primary duty of an employee include, but are not limited to: 1) the relative importance of the exempt duties as compared with other types of duties; 2) the amount of time spent performing exempt work; 3) the employee's relative freedom from the direct supervision; 4) and the relationship between the employee's salary and the wages

---

[2] The August 2004 amendment to the previous section, 29 C.F.R § 541.102(b), added "planning and controlling the budget" and "monitoring or implementing legal compliance measures" to the list of exemplar management tasks.

10

paid to other employees for the kind of nonexempt work performed by the employee.[3] *Id.*; *Casto v. Royal Oak Industries*, 2006 WL 322485 *3 (W.D.Mich.2006).

The amount of time spent performing the exempt work can be useful for the determination of whether exempt work is in fact the primary duty of the employee. 29 C.F.R. § 541.700(b). If an employee spends more than 50% of his or her time performing exempt work, the employee is generally considered to be exempt under the FLSA. *Id.* The Court acknowledges that time, by itself, is not the determinative factor, and nothing in the regulations requires that exempt employees are to be performing exempt work 50% of their working time.[4] *Id.* It is the character, type, and extent of activities and duties performed by employees that plays the primary role in any decision regarding the applicability of the exemption. *Anderson v. City of Cleveland, Tennessee*, 90 F.Supp2d. 906, 916 (E.D.Tenn.2000).

Further, the Court notes that an employer seeking to assert an FLSA exemption has the burden of proving that the employee falls plainly and unmistakably within the exemption's terms and spirit of the exemption. *Nielsen v. Devry Inc.,* 302 F.Supp.2d 747,

---

[3] 29 C.F.R. § 541.700(a)'s predecessor, 29 C.F.R. § 541.103, is substantially the same with two changes. 29 C.F.R § 541.700(a) deletes the factor relating to frequency with which the employee exercises discretionary powers. "Discretionary powers" and "freedom of supervision" overlap to a certain extent and are easily examined together. *Jones v. Virginia Oil Company*, 69 Fed.Appx.633, 650, 2003 WL 21699882 (4thCir.2003). 29 C.F.R. § 541.700(a) adds the word "direct" before the word "supervision." The modification does not add anything new to our analysis. The Court does not believe that indirect supervision is relevant to the analysis of this case under either version of the regulations.

[4] However, the Court notes that as the percentage of time for non-exempt tasks increases, it becomes less likely that the employer derives its principal value from the employee's exempt duties. This merely reflects the obvious point that the "primary duty" inquiry is different where an employee spends over 50% of his or her time on non-exempt tasks rather than 80% of his or her time on such tasks.

11

752 (W.D.Mich.2003); *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). In light of the FLSA's broad remedial aims, the exemptions from the FLSA's coverage must be narrowly construed against the employer seeking to assert it. *Mich. Ass'n of Gov't Employees v. Michigan Dep't of Corr.*, 992 F.2d 82, 83 (6thCir.1993); *see also Arnold*, 361 U.S. at 392. The question of how an employee spends his time is a question of fact, while the question of whether his activities fall within an exemption is a question of law. *Nielsen* 302 F.Supp.2d at 752. The inquiry into exempt status is intensively fact-bound and case specific. *Roberts v. National Autotech, Inc.*, 192 F.Supp.2d 672, 676 (N.D.Tex.2002). The determination of whether an employee is exempt is an inquiry that is based on particular facts of his employment and not general descriptions. *Ale v. Tennessee Valley Authority*, 269 F.3d 680, 688-89 (6thCir.2001).

Mr. Johnson does not dispute that he performed some management tasks as part of his regular duties. However, Mr. Johnson declares that these duties represented a small percentage of the work he performed at Target and that his primary duty was "pushing freight." Thus, Mr. Johnson opposes summary judgment on the basis of the existence of a disputed factual issue, namely, the nature, extent, and relative importance of Mr. Johnson's various duties while employed at Target as the ETL-Replenishment.

It is true that a party cannot oppose summary judgment by submitting an affidavit or other declaration which is in conflict with that party's record testimony, thereby creating

12

Case 3:05-cv-00153   Document 45   Filed 03/08/06   Page 12 of 18   PageID #: 12

a "sham" issue of fact.[5] See *Biechele v. Ceder Point, Inc.*, 747 F.2d 209, 215 (6thCir.1984). But this case does not present a "sham" issue of fact. Instead, Mr. Johnson stands by all of his characterizations of duties that he performed for Target, contending that the relative significance of these different duties necessarily involves the resolution of certain facts.

The question of how Mr. Johnson spent his work time and the significance of his duties at Target is a question of fact for the jury. It is clear that this question is genuinely disputed. Moreover, there are significant gaps, ambiguities, and internal inconsistences in testimony that prevent the formation of a complete understanding of Mr. Johnson's work as pertinent to the duty test. Target asserted that the question is immaterial in that Mr. Johnson's primary duties were executive notwithstanding the time he spent on non-exempt tasks. In other words, Target contends that since Mr. Johnson admitted to performing certain executive duties, this conclusively demonstrates that these executive duties were of "special significance" and, thus, were Mr. Johnson's primary duties regardless of how Mr. Johnson spent his work time.

Again, the significance of duties relative to one another is a factual question. *Shockley v. City of Newport News*, 997 F.2d 18, 26 (4thCir.1993). Furthermore, the deviation from the guiding 50% rule of time spent requires consideration of the factual circumstances for which a jury is more appropriate. *Clark v. J.M. Benson Co., Inc.*, 789

---

[5]In Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Target asserted portions of Mr. Johnson's affidavit contradict his previous deposition testimony. Target asserted that Mr. Johnson is attempting to create an issue of fact.

13

F2d. 282, 286 n.2 (4th Cir. 1986). Viewed favorably to Mr. Johnson, this evidence does not compel a reasonable fact finder to conclude that Mr. Johnson's work responsibilities satisfy the duty test. Therefore, summary judgement on this issue is not appropriate.

### Retaliation Claims under Title VII, the FLSA, and the THRA

To establish a *prima facie* case of retaliation, the plaintiff must prove: 1) he engaged in protected activity; 2) the exercise of protected rights was known to the defendant; 3) that the defendant then took an adverse employment action against plaintiff or plaintiff was subject to severe and pervasive retaliatory harassment; and 4) a casual connection existed between the protected activity and the adverse employment action or retaliatory harassment. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6thCir.2000). The burden upon the plaintiff to establish a *prima facie* case of retaliation is minimal and easily met. *EEOC v. Avrey Dennison Corp.*, 104 F.3d 858, 861 (6thCir.1997) (citing *Wrenn v. Gould*, 808 F2d 493, 500 (6thCir.1987)).

Title VII expressly proscribes retaliation against anyone who has opposed any practice made an unlawful employment practice by Title VII or who has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutory scheme. 42 U.S.C. A. § 2000e-3(a). Mr. Johnson, an employee of Target, participated in an investigation regarding an employment action against Target. The parties do not dispute that Mr. Johnson engaged in a protected activity.

14

However, the parties disagree as to whether the employer was aware of the protected activity. Target stated that the alleged retaliator, Mr. Oakley, did not know that Mr. Johnson had given a statement in connection with an employment action. However, Mr. Johnson stated that he believes that he might have casually mentioned the Disler matter, including receiving a phone call, to Mr. Oakley, in which Mr. Oakley abruptly cut the conversation short. Further, Mr. Oakley stated that he discussed the Disler matter with the STL involved in the lawsuit around the time that Mr. Johnson gave a statement. Additionally, Mr. Johnson stated that he advised both Bobby Burke and Robin Jetton, Target ETL personnel at the SuperTarget, that he had given "testimony" regarding the Disler lawsuit. When viewed in the light most favorable to Mr. Johnson, sufficient evidence has been presented to establish the second element of a *prima facie* case for retaliation.

The parties also dispute whether Target, namely Mr. Oakley, took an adverse employment action against Mr. Johnson and/or that Mr. Johnson was subject to severe and pervasive retaliatory harassment. In review of the facts, Mr. Johnson submitted that Mr. Oakley continually had a disgusted look upon his face when addressing him and that Mr. Oakey spoke to him in a negative and harassing manner. Furthermore, Mr. Johnson believed that Mr. Oakley, in his comments to him, was trying to "run him off" from his employment at Target. Mr. Johnson articulated that he was forced to work longer hours than other STLs, recalling 16-hour work days and coming in on his "off" days; that Mr. Oakley would tell Mr. Johnson not to leave until the work was done; and that Mr. Oakley, when not at work, would call and harass Mr. Johnson at the store regarding work obligations. Furthermore, the reprimand in connection with the alarm system and the

15

evaluation quandary are additional issues of fact for consideration. Although Target asserted that Mr. Johnson voluntary quit, it is reasonable, when viewing the culmination of Target's actions in the light most favorable to the plaintiff, that Mr. Johnson was forced to quit, i.e. "constructively discharged."

Lastly, the parties dispute whether a casual connection existed between the protected activity and the adverse employment action or retaliatory harassment. The plaintiff is required to put forth some evidence to establish a causal connection between the retaliatory action and the protected activity, requiring the court to draw reasonable inferences from that evidence, providing it is credible, and this burden is minimal. *Avery*, 104 F.3d at 861. The fact that the protected activity and adverse actions have close timing may suffice to satisfy the causal connection requirement. *Mallory v. Noble Correctinal Institute*, 45 Fed.Appx. 463, 473 (6thCir.2002). The "reason for inferring a casual connection from retaliation that occurs very shortly after a protected Title VII activity is that in such a short period of time little other than the protected activity could motivate the retaliation. Consequently, in those instances, it is safe to conclude that the sole cause of the adverse employment actions was the only aspect that changed - engaging in protected Title VII activities." *Id.* Based on this assessment of the law, this is a case where temporal proximity is sufficient to satisfy the casual connection requirement.

Target asserted that since Mr. Johnson did not discuss this 3-step burden shifting scheme, summary judgment is appropriate.[6] However, the Sixth Circuit Court of Appeals held in *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6thCir.1997), that the "finding that the plaintiff has proven a *prima facie* case forces the defendant to proceed with the case. It necessarily follows, then, that the defendant is not entitled to judgment as a matter of law or summary judgment." Furthermore, the Sixth Circuit has also ruled that the same circumstances, which established a causal connection between Mr. Johnson's protected activity and the alleged retaliatory action, serve as sufficient evidence to meet the 3-part scheme.[7] *See Cantrell v. Nissan North America Inc.*, 145 Fed.App.99, 107-8 (6thCir.2005).

Mr. Johnson has set forth sufficient evidence to meet his burden of establishing a *prima facie* case of retaliation. Therefore, summary judgment is not appropriate.

## **CONCLUSION**

---

[6]Target discusses the *Manzer* case. *Manzer* involved age discrimination and held that if the plaintiff can make a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its actions. If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6thCir.2000).

[7]The *Cantrell* Court disagrees with the rule in *Manzer*, which involves an age discrimination employment matter. The *prima facie* elements for age discrimination, as discussed in *Manzer*, do not include showing of a causal connection existing between a protected activity and the adverse employment action. The overlap between the causal connection requirement and a showing that the proffered reason for termination was not the actual reason is implicitly recognized in our case law, which permits both to be proven by the same type of evidence." *Cantrell, 145Fed.App.* at 108 n. 2.

For the reasons hereinabove set forth, defendant's motion for summary judgment [Doc. 21] is **DENIED.**

**IT IS SO ORDERED.**

**ENTER:**

S/Thomas W. Phillips
United States District Judge